# In the United States Court of Federal Claims
**OFFICE OF SPECIAL MASTERS**
No. 19-1886V
UNPUBLISHED

| | |
|---|---|
| JULIA WHITE,<br><br>      Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>      Respondent. | Chief Special Master Corcoran<br><br>Filed: June 13, 2023<br><br>Special Processing Unit (SPU);<br>Entitlement to Compensation; Ruling on the Record; Findings of Fact; Tetanus Diphtheria Acellular Pertussis ("Tdap); Shoulder Injury Related to Vaccine Administration (SIRVA) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for petitioner.*

*Nina Ren, U.S. Department of Justice, Washington, DC, for respondent.*

### RULING ON ENTITLEMENT[1]

   On December 12, 2019, Julia White ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by a tetanus-diphtheria-acellular pertussis ("Tdap") vaccine administered on July 12, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons described below, I find that Petitioner is entitled to compensation.

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

## I.     Relevant Procedural History

After the claim's initiation, Respondent indicated that he was interested in settlement discussions on March 25, 2021. ECF No. 25. While the parties continued to discuss settlement, Petitioner was ordered to file a motion for a ruling on the record due to the length of time this case was pending. ECF No. 43. Petitioner filed a motion for a ruling on the record on August 12, 2022, arguing she had met the Table's SIRVA claim requirements. Petitioner's Motion for Ruling on the Record ("Mot."), ECF No. 46, at 7-10.

Respondent opposed compensation on September 12, 2022. Respondent's Response to Petitioner's Motion for Ruling on the Record ("Opp."), ECF No. 47. Respondent maintains that because her pain was reported outside of her shoulder, a critical SIRVA element cannot be met. *Id.* at 11-12. Petitioner filed a reply on September 26, 2022. Petitioner's Reply to Respondent's Response to Petitioner's Motion for Ruling on the Record ("Reply"), ECF No. 48.

## II.    Petitioner's Medical Records

Petitioner received a Tdap vaccine in her left shoulder on July 12, 2017. Ex. 2 at 18; Ex. 1 at 2. There is no history of prior left shoulder pain or issues.

Nine days later, on July 21, 2017, Petitioner presented to Piedmont Medical Center for persistent pain at the Tdap injection site "since receiving tetanus shot." Ex. 5 at 76. Petitioner reported "intense pain" with passive range of motion exacerbated by movement of her elbow, hand, and wrist. *Id.* at 77. An x-ray was unremarkable. *Id.* at 98. A hematoma was suspected, and Petitioner was prescribed an opiate, anti-inflammatories, and suggested to use warm compresses. *Id.* at 77, 94. A request for four days away from work was also completed.

Approximately two weeks later (on July 27, 2017), Petitioner reported constant, throbbing pain in her shoulder that "radiate[d] to the neck" and was worsening. Ex. 2 at 14. An examination was "notable for pain with active and passive" range of motion. *Id.* at 16.

On July 28, 2017, Petitioner was evaluated by Dr. Glen Feltham at the Specialty Orthopedics and Sports Medicine for shoulder pain. Ex. 3 at 20. Petitioner reported pain in her left shoulder that began the same day she received the tetanus vaccine but denied radiating pain. *Id.* An examination showed tenderness globally around the left shoulder, reduced range of motion and pain and the extreme ranges, along with reduced strength.

*Id.* at 21. Petitioner was assessed with bursitis of the left shoulder. Ex. 3 at 20-21. A steroid injection was administered at that time as well. *Id.* at 22.

Petitioner returned to Dr. Feltham on August 4, 2017. Ex. 3 at 18. Petitioner now reported that the steroid shot was successful, but that her pain had returned two days before. *Id.* Dr. Feltham noted that Petitioner's pain was "localized to [the] subacromial space." *Id.* Petitioner was diagnosed with left shoulder impingement syndrome and pain radiating to the left shoulder, with differential diagnoses including rotator cuff syndrome, painful arc syndrome, or subacromial bursitis. *Id.* Another corticosteroid injection was administered, and Petitioner was prescribed naproxen and an anti-inflammatory. *Id.* 18-19.

Petitioner next reported arm pain on August 10, 2017, stating that her left shoulder pain returned two or three days after the second steroid injection. Ex. 3 at 16. Prednisone was prescribed, which was reportedly ineffective. *Id.* at 14.

On September 12, 2017, Petitioner reported pain "from her left trapezius all the [way] down her arm." Ex. 5 at 175. An examination showed normal strength and range of motion, with no tenderness or swelling. *Id.* at 176. Gabapentin and another anti-inflammatory were prescribed. *Id.* at 177. Petitioner reported pain again on September 13, 2017, that radiated from her neck to her shoulder and left arm. Ex. 8 at 11. An x-ray was unremarkable. *Id.* at 11, 41. An examination showed "severely limited" range of motion due to pain. *Id.* at 11-12. Vicodin and an oral steroid were prescribed. *Id.*

Petitioner underwent an MRI on September 20, 2017, and it revealed a contusion on the humeral head and a partial tear of the supraspinatus tendon. Ex. 5 at 45. Dr. Feltham also examined Petitioner and noted limited active range of motion. Petitioner's diagnoses were updated to include acute arthritis and effusion of the joint of the shoulder region. Ex. 3 at 10-11.

Another corticosteroid injection was administered on September 21, 2017, and a joint aspiration was performed. Ex. 5 at 150. The aspiration was "minimally successful," however. *Id.* And a few days later, Petitioner reported to Dr. Feltham that the third steroid injection had proven ineffective. Ex. 3 at 8. An examination noted left shoulder pain with passive range of motion, weakness, and "mild tingling in tips of all five fingers." *Id.* Dr. Feltham was "perplexed" as to the actual diagnosis and recommended a second opinion. *Id.* at 9.

On October 9, 2017, Petitioner presented to Affinity Health Center to establish care and to get a referral to an orthopedic specialist. Ex. 4 at 7. Petitioner's shoulder exhibited

decreased range of motion and discomfort "with attempt to raise left arm or extend from torso." *Id.* at 8.

Petitioner began chiropractic treatment on October 24, 2017 for left shoulder humorous joint pain and arm weakness. Ex. 6 at 1. Between October 25, 2017 and July 12, 2018 Petitioner attended 26 appointments for hand and arm pain, shoulder pain, cervical pain, and thoracic pain. *Id.* at 3-5, 13-14.

There was a subsequent downturn in the tempo of Petitioner's treatment visits specific to her shoulder. She reported shoulder pain at a routine gynecological visit on December 5, 2017. Ex. 4 at 5. But then six months passed before she returned to Affinity Health Center for continued left arm pain and mobility. Ex. 10 at 61. Petitioner was diagnosed with chronic shoulder and neck pain, and numbness in her fingers. *Id.* A muscle relaxant and non-steroid autoinflammatory was prescribed, and Petitioner was encouraged to engage in physical therapy. *Id.* at 61, 63.

A few more months passed before Petitioner next reported pain on September 13, 2018, stating she was experiencing it in her left shoulder, neck, and arm. Ex. 10 at 57. Then, on December 26, 2018, Petitioner sought care at Affinity Health Center because the "[w]hole left side of [her] body" was hurting. Ex. 10 at 53. An examination indicated that Petitioner's "[u]pper arms showed abnormalities" pain with extension of her left arm, and weakness. *Id.* at 53.

Petitioner reported cold symptoms on January 30, 2019, and also indicated pain in her left shoulder. Ex. 10 at 50. An examination showed reduced range of motion and limited external rotation due to pain. *Id.* at 51.

On February 8, 2019 Petitioner was evaluated for physical therapy. Ex. 12 at 8. She described her pain as between five and nine out of ten, and was located in the left shoulder, posterior neck, and scapula. *Id.* at 6.

Petitioner next sought care for shoulder pain several months later, on September 17, 2019. Ex. 10 at 42. An examination continued to show reduced range of motion (Ex. 10 at 43), and she was prescribed gabapentin and naproxen. *Id.* at 44.

In the following year, Petitioner was seen for shoulder pain in June 2020. Ex. 10 at 16. She reported reduced range of motion and that she "cannot raise arm above 90 degrees." Ex. 10 at 16. However, a physical exam indicated she showed full range of motion. *Id.*

Petitioner was next seen for a follow-up on February 25, 2021 and May 11, 2021. She reported continued shoulder pain. Ex. 11 at 11; 14. On May 11, 2021, Petitioner was advised that she may need to be evaluated by a disability physician and have a neurology evaluation for her pain. *Id.* at 11. On August 5, 2021 Petitioner underwent a nerve conduction study that was "[b]orderline normal". Ex. 11 at 33-34. Notably, there was no evidence of neuropathy or radiculopathy. *Id.* at 34. Petitioner was last seen for a follow-up regarding her continued shoulder pain on November 23, 2021. *Id.* at 8.

### III.  Parties' Arguments

Petitioner asserts that she satisfies all legal prerequisites for compensation. Mot. at 7-9; Reply at 1-4. Respondent argues that Petitioner cannot meet the definition of a Table claim because the pain was not limited to her shoulder. Opp. at 11-12.

### IV.  Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury.  *See* § 11(c)(1)(A)(B)(D)(E).

(ii) Pain occurs within the specified time frame;

(iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and

(iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.* NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion, and I find that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

#### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of her Vaccination

The medical records preponderantly establish, and Respondent does not dispute, onset of injury close-in-time to vaccination. Petitioner first sought treatment approximately nine days after her vaccination and reported "persistent pain at the injection site" since receiving the Tdap vaccine. Ex. 5 at 76.

Accordingly, I find there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

#### 3. Petitioner's Pain was Limited to her Left Shoulder

Respondent argues that Petitioner cannot establish that her pain was limited to her shoulder because she *also* reported pain in her left arm, left elbow, left hand, along with numbness in her fingers. Opp. at 11-12. While Respondent's argument has merit, it ultimately fails to rebut Petitioner's otherwise-preponderant Table showing.

The record unquestionably contains reports of non-shoulder pain complaints, but *at the same time* consistently reveals complaints of shoulder pain and loss of range of motion in Petitioner's left shoulder. Ex. 3 at 20-22; Ex. 8 at 11-12. Petitioner's complaints, and the diagnoses, are also focused on the shoulder. *See, e.g.*, Ex. 3 at 18 (August 4, 2017, record noting that Petitioner's pain was "localized to [the] subacromial space" of her left shoulder). Further, other causes of arm or neck pain were ruled out by the August 5, 2021 nerve conduction study, including neuropathy and radiculopathy. Ex. 11 at 33-34.

Pain reported in Petitioner's left elbow, neck, and numbness may be unrelated to Petitioner's SIRVA – but that kind of complaint or injury can be disregarded in calculating damages. The mere existence of such record complaints does not defeat a showing that Petitioner not only did experience shoulder-specific pain, but that most of her complaints and treatment efforts were aimed at that. Accordingly, preponderant evidence supports this Table element as well.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on July 12, 2017, in the United States. Ex. 1 at 2; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) at 18(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 7 at 2; Section 11(c)(1)(E) (lack of prior civil award). Further, as discussed above, Petitioner has satisfied the requirements for a Table SIRVA.

The last criteria which must be satisfied by Petitioner involves the duration of her SIRVA. For compensation to be awarded, the Vaccine Act requires that a petitioner suffer the residual effects of his or her left shoulder injury for more than six months or required surgical intervention. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement). Here, Petitioner reported pain until at least November 23, 2021, more than six months after her Tdap vaccination.

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

In view of the record, I find preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA, and that Petitioner is entitled to compensation.

The parties shall file a Joint Status Report by <u>July 6, 2023</u>, indicating whether settlement discussions are likely to be productive.

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master